In ordering the payment of damages for future life care expenses and lost future earnings, the District Court elected to apply Oklahoma's periodic payment statute, evidenced by the fact that it amended Plaintiff's Trust Agreement to require that payments for damages be completed within seven years, as required by Oklahoma's statute. Well, I don't know that the fact that the court limited the trust to seven years means that it adopted Oklahoma's periodic payment statute. In fact, there are no periodic payments here. Correct, Your Honor. In fact, there couldn't be, because the government can only make a lump sum payment. So I don't understand how we can infer that somehow the District Court decided, I'll be bound by all the obligations of the Oklahoma periodic payment statute, even though I didn't order periodic payments. So two responses, Your Honor. First, the District Court clearly explained that it was applying that Oklahoma statute. It wasn't very clear. Definitely was not clear. The District Court did explain, however, that it was ordering the payment of damages, quote, based on Oklahoma's statute. That's page 90 of the second, excuse me, second volume of our appendix. That was the first time, first opinion it issued, and then on rehearing it didn't say that exactly, did it? On rehearing, it wasn't, it did not specify exactly, no. The plaintiffs themselves confessed that the structure of the trust was made to comply with the terms of the Oklahoma statute. And indeed, the District Court considered the scope of its authority in determining how to structure the trust in this case. Well, the District Court didn't have to require periodic payments even under Oklahoma law, right? That's true. It could have ordered that a lump sum be made, period, full stop. And a nongovernment defendant who made a lump sum payment would not be entitled to any reversionary interest, right? That's correct, Your Honor. Under Oklahoma law. That's correct. That's not what was done here. There is a partial reversionary interest for the government, which would never be applied to a private party. I can analogize to a private plaintiff, or a private defendant. For example, had the judgment creditor, Baby Stokes, prematurely died in this case, any future payments of medical expenses would not be made. If you were under periodic payments. Correct. Right. And that is what the District Court was approximating in this case. Well, if you don't have periodic payments, your opportunity for a revisionary interest is greatly diminished. So really, those two requests, or claims, or arguments on your part are very much related, are they not? That's correct, Your Honor. But the District Court could have ordered a strict lump sum payment, or it could, as made into a trust, and then disbursements made from that trust on a periodic basis. In this case, it declined to order that those payments be made on a schedule, as the Oklahoma statute requires. And instead, those payments are made at the trustee's discretion. The Oklahoma statute isn't looking at disbursements from the trust in terms of periodic payments. The Oklahoma statute is looking at payments from the tortfeasor. That's correct, Your Honor. So here, we don't have periodic payments. You'd agree with that, right? And that's where the government contends that the District Court erred. It's worth analogizing this circumstance. Well, because it couldn't. It couldn't order periodic payments from the government. That's correct. This Court adopted the Third Circuit's reasoning in Frankel in the opinion in whole, saying that the government's waiver of sovereign immunity effectively only takes place at the time of judgment. But it's worth reiterating the analogy to a private party defendant. Well, so the Court said, I'm making a lump sum payment, and it's going into a trust, not to protect the government, to protect Baby Stokes. And the Court then was not required, because it wasn't under the periodic payment statute. It had discretion to order how that trust would be managed independent of the Oklahoma statute. It doesn't mean it couldn't look to the Oklahoma seven years for guidance, but I don't see that it was required to apply laws in Oklahoma that deal with periodic payments when we're not dealing with the periodic payment. So it's worth analogizing to a private party defendant in this case. So under the terms of the trust here, disbursements are made for future medical expenses at the trustee's sole discretion. Were the United States a private hospital, for example, if payments were made on an ad hoc basis, the hospital would be making payments for future medical expenses effectively as those expenses are incurred. That is completely contrary to the policy that the Oklahoma legislature chose to adopt by enacting the periodic payment statute. So in this particular case, the United States, it's true, makes one payment to a trust. However, it's important for the United States as well to have certainty in its reversionary interest. The statute at issue here would provide that all of those future medical expenses would revert to the United States in the event of the judgment creditor's untimely death. And that would also happen for a private defendant. The arrangement that the- For seven years if we're under Oklahoma, right? Correct. Correct. Exactly. But this arrangement that the district court applied, this hybrid arrangement applying certain terms of Oklahoma's periodic payment statute would never be applied to a private individual. It's true the district court had discretion to award a lump sum payment. Well, how do we get into the Oklahoma statute? Is it merely the fact that the court adjusted the original trust to trigger the seven-year requirement? There are several reasons that you can interpret the court's opinion by doing so. It says explicitly that it ordered the payment of damages based on Oklahoma statute. It amended the trust- And did it cite the statute that's at issue here that we're looking at now? It does cite that statute. Yeah, I thought so. Okay. Page 90 and 91 of the second volume of the appendix. As to the seven-year limit on the reversionary interest. Correct. And required that the trust be amended to comply with the terms of Oklahoma statute. So your argument is you can't take bits and pieces of the statute. Once your toe's in the water, you have to take the whole thing. Exactly, Your Honor. Why? To the extent this court articulated in Hill that the state statute for payment of damages must apply to the United States to the same extent to which it would apply to a private individual. But the statute wouldn't apply at all to a private individual who made a lump sum payment. And so that private individual would have no reversionary right. The United States got more than a private individual would get. The United States could equally pay a lump sum to the plaintiffs without a trust. Good. That's right. But the court would be foolish to allow that. Your argument depends on the approximation point. That's correct, Your Honor. And the court is obligated to, assuming the statute is mandatory once you opt into it essentially, which is your argument, assuming that to be true, the court was obligated to And the way other courts have done that with mandatory similar state statutes is to require payments by the trust over a periodic time period, correct, so that it approximates for the United States essentially what it would have had as a private plaintiff. That's exactly right, Your Honor. It's also worth pointing to page 13 of the United States reply brief in which we cite numerous circumstances in plaintiffs' own response brief in which they effectively concede that the district court applied the Oklahoma statute. At one point, they expressly note that the effect of the trust arrangement itself was to mimic the terms of the Oklahoma statute. So even if the court has difficulty parsing the district court opinion, plaintiffs themselves make clear that the trust arrangement was structured to mirror the terms of the Oklahoma statute. However, it doesn't do so as the statute requires. There's not a full reversionary interest in the future medical expenses for the United States, and that reversionary interest is highly uncertain. Did you make this argument in the district court? Because it seemed to me that the district court was a little bit confused and didn't seem to understand your argument, or at least the argument you're making now, which is that once you apply the statute, you've got to apply it fully or approximate it fully is what you're arguing. That's correct. And I didn't, I mean, I think the district court clearly was not understanding that concept, which is why we get some inconsistent statements about what it was doing. So following the entry of judgment, yes, following the entry of judgment, the district court actually ordered supplemental briefing on this precise issue on whether in entering a payment, structuring the payment of damages, how to apply Oklahoma's periodic payment statute. The parties each then briefed that issue, and plaintiffs in that briefing conceded that if the Oklahoma statute applied, then periodic payments could be determined accordingly, as the statute requires. Again, that's not what the district court did here. It effectively cherry-picked which provisions of that statute to apply, and was not clear in requiring that payment of damages. Is it possible that the district court believed that it could do that, and that it essentially was operating under its inherent powers to do this, and yet it was picking and choosing from the Oklahoma statute? Not necessarily opting in, as you requested, to the Oklahoma statute, but picking and choosing what it thought was fair in this case, and do we know whether it did that? Do we need to ask the district court whether it was operating under its inherent powers? Correct, Your Honor. But if the district court believed that certain provisions of the statute were discretionary, that's legal error. The statute makes clear that the court shall make a specific finding of the dollar amount of periodic payments, and the court shall specify in its judgment how those periodic payments should be structured. There's no wiggle room in that respect once the statute itself applies. It may be legal error. I'm just saying, trying to get at what the district court was trying to do, a fair result that it was trying to reach here, and it may be that it could only do that by exercising its inherent powers outside the statute. I believe that the Oklahoma statute actually foreclosed those inherent powers. The court had some authority to structure damages outside of the Oklahoma statute, but by opting into the statute, it was required to structure the payment of damages accordingly. Well, the statute says, upon request of the party, the court may order that future damages be paid in whole, in part, in periodic payments. And then it says, if the court does order periodic payments, these are the things you have to do. Here, the court didn't order periodic payments. That's correct, Your Honor, and that's where we contend the court erred. And it had the authority under section 9.3 of the Oklahoma statute not to do so. Correct. And that's where the United States contends that it opted into the statute in changing the term of when payments must be made under the trust agreement to seven years from 14 years, and was recognized that the scope of its authority was diminished by applying the terms of the Oklahoma statute, and in doing so, it opted into this regime. So you're saying if the court decides to limit it to seven years, it automatically is bound by everything in the statute, and no longer has the discretion granted in section 9.3 to not order periodic payments. Under the circumstances which the court was explaining in ordering damages be paid here, that is our contention. With the court's leave, I'd like to reserve the remainder of my time for rebuttal. Thank you. Good morning. Good morning. If it pleases the court, my name is George Brawley. I'm the attorney on behalf of Baby Stokes and his mother and father. The last words from Judge Heaton at the end of the trial were to Taylor Stokes, and the judge said, your baby is really lucky. You need to pull the microphone closer to your mouth. The judge said, Mr. Stokes, the court wants you to know that your son is really lucky to have the two of you as parents. This judge carefully crafted this remedy. The judge, because he stated so directly, was clearly impressed by the possibility that early in this child's life, there may be extraordinary expenses that would exceed what was in the bank account for the previous one-seventh deposit into the bank account. That could have killed this child, could still kill it if that's imposed, and the judge declined to do that. Keep in mind, there was no obligation on the court of any kind to agree to any reversionary interest. If you look at this court's jurisprudence in Hall, in Hall, that case, the court entertained a reversionary trust only because the court had personally investigated the home situation and the parents and made a determination that it was in the best interest of the child. That's completely different than this case, where the exact opposite determination was made. The court also expressly stated that it had confidence in the very experienced trust department in the local bank, who has been the trustee for five similar children with similar problems out of the same hospital, most of whom I've represented, and that the probate court in Pontotoc County, Oklahoma, would be able, in combination with the trustee, to properly manage these funds. That was a pretty well-thought-out process by the trial judge. What the United States argues, that it would have been well and good if the district court had just awarded the trust and not done anything that was related to the Oklahoma statute, but once it reached out and amended its order, and it reached over and picked up the seven-year limit on reversionary interest, that it was then bound to comply with all of the elements of the Oklahoma statute. I'd like you to reply to that. The United States has failed to cite a single case of any authority that says that if the court adopts some provision of a voluntary Oklahoma statute, that the court is obligated to incorporate every provision, and of course, in this case, the court cannot incorporate every provision, because the court can't order periodic payments. Well, that's your fundamental disagreement, I think. They rely solely on the language of the statute, which is Section D, because they requested to proceed under the statute, which is the statute anticipates upon a request by a party, which is the United States here, that the court may order, and then the statute goes on. The court then shall make a specific finding of the dollar amount of periodic payments, and then it continues on, shall decide the recipient, shall decide the dollar amount, shall decide the interview interval. So that's what they're arguing. They're arguing the language of the statute makes it voluntary to begin with upon the request of a party, but once the court decides, yes, I'm going to do this, if it's a private party, they then order all these things, and because we must approximate what a private party does here for the United States, it must approximate all these various one through four, plus sections E, F, et cetera, once it allows the opting in, and that's their argument. Yes, it is. Based on the language of the statute, which I didn't see that you really addressed in your brief. Well, I thought we did. I apologize if we did not, but let me point out another aspect of that. Ask yourself what this judge could have done. He could have said, okay, if the law requires me, just because I referenced seven years in response to an offer of a limited reversionary interest by a counsel for the plaintiff as part of the post-trial briefing, the judge could have said, well, if I've got to comply with every provision, there's nothing in the statute that requires seven periodic payments over seven years. The statute only says there will be no more, that the extent of the periodic payments will not exceed seven years. Well, then should we remand to the district court to make a choice, either comply with the Oklahoma statute in its entirety, or don't limit the reversionary interest? Well, frankly, Your Honor, we were trying to avoid the common practice of the government of the United States that almost always takes an appeal in these cases, almost always over some issue involving a reversionary interest. And we put that out there in an effort, hopefully, to avoid having to be here today. Well, the government's entitled, as it points out in the law, the federal law requires, which the judge was required to take into account, that they be treated in approximately the same manner as a private individual. And that's their argument here. It is their argument. So you can't ignore that. Consider the alternative. Suppose the judge has said, yep, I agree with everything you just said to the United States, but I've got the discretion to fashion the periodic payments. As long as they don't exceed seven years, then I comply with the statute. What if I make it 12 months? Half of it at the time of the judgment, half of it 12 months later? That would be perfectly in compliance with the periodic payment statute. The judge could have said half of it on day one and half of it 30 days after that, and it would have perfectly complied with the Oklahoma periodic payment statute. It seems to me like... And maybe it could do that if we remand to say you've got to comply with the statute. We don't know what the court would do in terms of the actual payments. I think it would hamstring future judges in similar situations to say that if you so much as pick up the Oklahoma green statute books and look at Title 23 and happen to glance at Section 9, that you're obligated to comply with all the provisions in that section, even though you're not permitted to comply with all the provisions because of limitations by the federal government. For example, and this is seriously important, that Oklahoma statute also says they have to pay 7.5% interest under the Oklahoma judgment right. Well, the federal government can't do that. Right, so they've got to approximate. Once again, you can't apply it strictly, so the law requires the court to approximate. So that becomes a double penalty for this family because they're damaging... No, the United States is still going to be depositing a lump sum that we'll be earning interest, of course. I mean, this isn't going to change the fact that the United States would still deposit the lump sum up front. But the United States interprets that to require that they pay interest at the federal judgment rate, which right now is about 2.5%. The Oklahoma statute right now mandates that it be paid at 7.5%. And over that seven years, I've run the numbers, that penalizes this family about $2.3 million, just that distinction alone. So again, the government wants to cherry pick provisions that favor the government, and they want the court, and they want this court to order Judge Heaton to disregard those provisions that favor the family. I do want to address our cross-appeal, okay, if I may. There are two substantial issues that we have raised on our cross-appeal. I will tell the court we would have never filed that cross-appeal if the government had not started this. But they did, and there are two very large issues there that I think can usefully be addressed and would have a very salutary effect with respect to the jurisprudence in this circuit. The first one is on the discount rate. Judge Heaton said in one of his footnotes that he was not bound by, I believe it was footnote 38, he was not bound by the Jones and Laughlin versus Pfeiffer decision. It didn't apply to the FTCA. He did that, apparently ignoring this court's jurisprudence in whole, in which this court cited Jones and Laughlin favorably in the whole decision, another FTCA case. Other courts, especially the Ninth Circuit, have specifically said Jones and Laughlin applies to FTCA cases. I can see no logical reason why it doesn't. The Supreme Court actually did a really, really, really good job in describing how you go about discounting to net present value damages, and it said there's two basic elements, and the second one has two parts. The first element is that you have to determine the inflation rate for, in this case, medical services. That's a go sit down at your computer, and three minutes later you look up the Commons Department's data, and it says 6.28 percent. That was not in dispute by either expert. The second thing you do is you have to figure out what the investment rate is, and the Supreme Court told us how to do that, and they got it right. Your position is that in addition to being very safe, it has to also be currently available. That's not my position, Your Honor. That's the position of the Supreme Court of the United States. We're talking treasury bills. Treasury bills is what you think should be the measure? Their expert, Dr. Clark, stated under oath that if we're looking for essentially risk-free investments, that it's either treasury bills or a close approximation, which I cited to him would be AAA rated Oklahoma City municipal bonds. He agreed that both of those were essentially safe investments. What rate did he use on his ladder? The judge used 6.28, because the judge declared it to be a wash between the 6.28 inflation rate for medical services and the investment rate, which was 6.28. Your position is there's absolutely no treasury bill around today or when this judgment was paid. If there is, could you send us a 28-J letter telling us where we could find that? Absolutely correct. Look, at the time of the trial, at one point, I think we had the Wall Street Journal out in the courtroom looking at the various available investment rates. I think I challenged one of their experts, said, find me an investment rate that's in a secure investment that's over 3%. He couldn't do it. What happened here with the district court? Where did the district court err? Did it err by just sort of picking a number in the middle and saying it's a wash? The judge said because he was not bound and obligated to follow Jones and Laughlin, that he could declare it was a wash. He did that based on the government's hypothetical that, well, the investment rate may be sometime at some point, may be possibly some place in the future, is going to go up again to match the historic average that included the complete outlier during the 1980s when interest rates went to 20%. I'm sorry. They based it on the rate of high-performance municipal bonds from 1965 to 2014. Yes, and that included the entire 10-year period in the 1980s when interest rates on those things were 20%. They used a period of time, that's for sure. I guess their argument would be is that past shows future, right? Looking at past performance tells us what will happen, not just this period when things are very low, but it's going to change over time. The Supreme Court in Jones and Laughlin articulated it very clearly, said the injured party that's being compensated should not have to become an expert in market timing going down in the future. They need to be able to have an investment that is available the day they get the check so they can go down and invest that then and that that will provide them a secure stream of revenue that will match the future losses. The trouble is that things can change so quickly, especially right now, that currently available, I guess I'm not sure, you say just now it's the day they get the check, but these folks were testifying, you know, certainly wasn't the day they got the check and a lot could have changed between the day they testified as to what the current rate was that day and two months later or six months later or whenever they get the check. So I guess, what do you think currently available means? Does it mean a particular day? Does it mean a six-month period? I think it means currently available at the time the expert witness is testifying on the witness stand. Okay, so not the day they get the check then. Well, an absent appeal, that's 30 days later. Okay. Or else they got to post a bond plus seven and a half percent interest. I'm just saying it, as we know, currently things can fluctuate pretty greatly even within weeks. My time is up. I would suggest to the court strongly with respect to the second issue that we have, which is the non-economic damages that there's eight or nine circuits that have a different view than this circuit. I believe Judge Posner got it correct in the Seventh Circuit in the Jitsu Johnson case. He has a very articulate statement, very articulate statement as to what the rule is in the Seventh Circuit and that or some close variation has been adopted by my count by at least eight other circuits and I would encourage the court to look at that. Thank you. Thank you. Thank you, Your Honors. Just two quick points. First on the discount rate, the district court's opinion was fully consistent with the Supreme Court's ruling in Jones and Laughlin's deal. It was merely explaining that treasury bills or T-bills were not the required proxy for an investment rate. Well, they're not the required proxy, but the question is, can you use a discount rate that isn't available now and may never be available again? So the expert in this case provided municipal bonds from an average from 1965 to 2014 as a proxy for the rate of investment that could be available over the life expectancy of the child. As the Supreme Court explained in Jones and Laughlin's deal, that estimation is incredibly speculative and so regardless of whatever the T-bill rate was at one specific point in time, the expert in this case was using a 50-year average to be able to forecast economic conditions over the term of the life expectancy of the child. The child, the life expectancy being used for these calculations isn't 50 years. You're correct that the child's life expectancy is lower than 50, Your Honor. So you can't rely on a period for this interest rate to raise when all the assumptions are that the baby would have needed the money before then. I think the analysis cuts exactly the opposite way, Your Honor. Because the expert in this case used a longer term of period, it would have washed out greater variations in economic conditions over that period. You know, plaintiffs point to one particular area or period of high interest rates, but because the expert used a longer period, those higher rates would have been weighted down from lower rates during the rest of that period. And so the district court did not clearly err in adopting the discount rate offered by the expert. And it is worth emphasizing. Well, was there really any analysis by the district court? Or did he just, in fact, pick a number in the middle which ended up being a wash? So the district court adopted the expert's estimations, which was the rate of investment less the rate of inflation. And the expert, based on calculating those two averages, found that it was effectively a wash. And so the district court then relied on a Ph.D. economist from the University of Oklahoma to determine that these rates specific to future medical expenses were effectively the same. So which expert did he rely on in total? Is that what you're saying? Excuse me? Which expert did he rely on in total? The government's expert, Dr. William Clark. Clark? Mm-hmm. And let me, you say that this complies with Jones-Loughlin decision. Correct. But that decision says there's two prongs. One is the amount that the employee would have earned during each year that he could have been expected to work after the injury. And the second is the appropriate discount rate reflecting the safest available investment. You're asking us to read out the word available from the Supreme Court's decision. And we adopted that language for these types of cases in Hull. Correct. In Hull. Correct. Absolutely, Your Honor. So why do you get to not use an available investment when both the Tenth Circuit and the Supreme Court require that it be available? The expert in this case offered an investment rate that was a proxy for that which would be available over the life expectancy of the child. It's not available over the life of the payment. The Supreme Court is saying this, you have to be able to take your award and now, presently, available, invest it to start earning money to compete with inflation. My understanding of the Supreme Court's Jones and Loughlin Steel decision, Your Honor, is actually that you would have a rate of investment over the term of the payment of damages. And so it's not necessarily that the rate of investment is available. Can you point me to where you find that in this decision? I don't have it before me right now. But it's worth emphasizing again that the Supreme Court left open great discretion for lower courts in evaluating which rates of investment should be applied because the economic conditions in any particular case are going to vary substantially. And what the rate of investment would be is subject to different economists' estimations. I would agree with you that the Supreme Court left open what types of investments you could use so long as they were safe. But I don't think you can fairly read that decision as when they said reflecting the safest available investment, they meant that you could hypothetically decide what might be available over the next 30 years. But I believe that the experts provided, excuse me, Your Honor, I realize I'm over time. The municipal bond rate in Oklahoma City, for example, was roughly similar to that which the average that he approximated over the 50-year period. It wasn't identical, I acknowledge, but it was very similar. And that was only to support... I thought it was like 3 percent. I think it was quite a bit less, wasn't it? Yeah. I believe it was around... Which makes a big difference. I believe it was around 6 percent. I was just trying to find the... No, no. It was 3 percent. No. There was a chart of, I apologize I don't have it in front of me. Suffice it to say that the district court found that based on that expert's estimation, that would be a district court's holding. And on the issue of periodic payments requests that the court remand this issue to the district court to clarify whether it did apply the Oklahoma statute, and if so, to fully apply the operative provisions of that statute. Thank you. Thank you. Thank you both for your arguments this morning. The case is submitted. Court is in recess until 8.30 tomorrow morning.